UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

JOHN DOE #1, by and through his next friend,   )
SUSAN LEE, and JOHN DOE #2, by and            )
through his next friend, BILLY KING,          )
                                              )
                    Plaintiffs,               )
                                              )
 v.                                           )      No. 3:17-CV-41
                                              )
SEVIER COUNTY, TENNESSEE, SEVIER              )
COUNTY BOARD OF EDUCATION, and                )
Superintendent DR. JACK PARTON in his         )
official capacity,                            )
                                              )
                    Defendants.               )

## MEMORANDUM OPINION

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction
[doc. 4], Plaintiffs' Brief in Support of the Motion [doc. 5], Defendants' Response
[doc. 9], and Plaintiffs' Reply [doc. 12]. For the reasons herein, the Court will deny the
motion.

## I.    BACKGROUND

Plaintiffs John Doe #1 and John Doe #2 ("John Does") are minors and former
students at Sevier County High School in Sevierville, Tennessee, where they were
members of the school's basketball team. [Lee Aff., doc. 12-1, ¶¶ 2–3; King Aff., doc.
12-2, ¶¶ 2–3]. Last year, while John Does were in their junior year, they were arrested,
jailed, and charged with aggravated rape. [Lee Aff. ¶¶ 2–3; King Aff. ¶¶ 2–3]. "[A]s a

condition of bond," they "[were] restrained from attending high school at Sevier County High School." [Lee Aff. ¶ 3; King Aff. ¶ 3]. John Does and the District Attorney's Office, however, reached an eventual settlement agreement, which the Sevier County Juvenile Court announced in open court and which resolved the charges against them. [First Hr'g Tr., doc. 47, at 8:18–25 9:1–23; Second Hr'g Tr., doc. 69, 18:8–19]. Since then, John Does have had the charges expunged from their juvenile records, [Chief Deputy Clerk Letter No. 1, doc. 1-5, at 1; Chief Deputy Clerk Letter No. 2, doc. 1-6, at 1],[1] and attempted to re-enroll in Sevier County High School on three separate occasions, [Second Hr'g Tr. at 8:23–25; 9:1–5]. The Sevier County School Board ("School Board"), however, denied them the opportunity to re-enroll in Sevier County High School, based on a concern that their settlement agreement or the Sevier County Juvenile Court had barred them from returning to that specific school. [*Id.*]. The School Board instead offered them enrollment in any one of their four other high schools in Sevier County. [*Id.* at 61:19–25; 62:1–5].

John Does then brought this action against Sevier County, the School Board, and Superintendent Dr. Jack Parton ("Dr. Parton"), alleging that they violated 42 U.S.C. § 1983 by abridging their rights under the First Amendment and the Fourteenth Amendment of the United States Constitution. [Compl., doc. 1-1, ¶ 18].[2] John Does also contemporaneously filed a motion for a preliminary injunction under Federal Rule of

---

[1] Tenn. Code Ann. subsection 40-32-101(a)(1)(A)(i) states that "[a]ll public records of a person who has been charged with a misdemeanor or a felony shall, upon petition by that person to the court having jurisdiction in the previous action, be removed or destroyed . . . if . . . [t]he charge has been dismissed[.]"

[2] John Does do not raise claims under the Tennessee Constitution.

Civil Procedure 65, alleging that they "have invested themselves tremendously in the athletic program at Sevier County High School," that they are "considered to [be] physically gifted, highly talented within their skill set for their particular sport," and that "transferring to any other school will cause irreparable harm." [Compl. ¶¶ 9–10; *see* Mot. for Preliminary Inj., doc. 4, at 1]. Specifically, they claim that "opportunities that were available to them for scholarships and to compete collegiately have been damaged and/or are rapidly diminishing" because they have been unable to attend Sevier County High School and participate in its basketball program. [Compl. ¶ 20]. Within days of John Does' filing of this action, the School Board proceeded to the Sevier County Juvenile Court, which, at the School Board's request, memorialized the terms of John Does' settlement agreements in written Orders. [*See* Juvenile Records, doc. 9-1, at 1–7]. The School Board has since filed these Orders with this Court, and they state:

> Pursuant to an agreement announced in Court on a separate case, and a petition to this Court for entry of an Order memorializing the agreement, the following is ORDERED that:

> 1. That the respondent[s] . . . shall have no contact, directly or indirectly, with [the victim], a minor whose identity is known to the parties, the Court and the Sevier County School System.

> 2. No contact means respondent[s] shall not appear at any location where [they] know[] [the victim] will be present.

> 3. Should inadvertent contact occur, the burden is on the respondent[s] to cease the contact.

> 4. Respondent[s] shall not re-enroll in Sevier County High School.

[*Id.* at 3–4, 6–7].

3

Shortly after John Does brought this action, this Court scheduled an evidentiary hearing, at which the parties presented evidence and argument as to the propriety of a preliminary injunction. [Order, doc. 13, at 1; First Hr'g Tr. at 1–59]. A few weeks later, the Court held a second evidentiary hearing, to accommodate John Does' request to present additional evidence in support of a preliminary injunction. [Order, doc. 54, at 1; Second Hr'g Tr. at 1–99]. The Court received testimony from several witnesses, including John Doe #1; John Doe #2; John Doe #1's father; John Doe #2's father; Assistant District Attorney Rolfe A. Straussfogel; Jackie Renee Brown, who is John Does' homebound instructor; and Dr. Debra Ann Cline ("Dr. Cline"), who is the assistant superintendent and director of curriculum and instruction for the Sevier County School System.

During the hearings, John Doe #1's father described his son as "not a star player" but a "good player" who "stand[s] out" because of his "demeanor" and "supportive role[]" with the team. [First Hr'g Tr. at 25:25; 26:1–3; 27:2–4]. John Doe #2's father testified that his son currently has no athletic scholarship offers from any collegiate institution. [Second Hr'g Tr. at 25:3–6]. Even so, John Does explained that they want to return to Sevier County High School so they can continue to play for their former basketball coach, Ken Wright ("Coach Wright"), whom they consider to be their "ticket" to college. [*Id.* at 6:13–17; 47:9–16; 50:13–16]. John Does presented testimony to show that Coach Wright has "placed folks in the college ranks" and "may have sent [some]one to the NBA." [*Id.* at 31:2–5; 50:21–22]. Partly because of their relationship with and esteem for Coach Wright, John Does have declined the School Board's invitation to

4

enroll in one of Sevier County's four other high schools, all of which have school-sponsored basketball teams. [*Id.* at 61:19–25; 62:1–5; 72:5–7; 88:15–20]. In light of this record evidence, and the record evidence as a whole up to this point, the Court will now address John Does' request for a preliminary injunction.

## II.  PRELIMINARY INJUNCTION

Under Federal Rule of Civil Procedure 65, the purpose of a preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction, however, is an "extraordinary remedy," and the movant has "[the] burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). When considering whether to issue a preliminary injunction, a court considers four factors: (1) whether the movant has shown a strong likelihood of success on the merits of the controversy, (2) whether the movant will suffer irreparable harm without an injunction, (3) whether an injunction would cause substantial harm to others, and (4) whether an injunction would serve the public interest. *Id.* The movant has to present "[e]vidence that goes beyond the unverified allegations of the pleadings and motion papers." *Salmon v. Old Nat'l Bank*, No. 4:08CV-116-M, 2010 WL 716232, at *4 (W.D. Ky.) (quotation omitted), *abrogated on other grounds by* No. 4:08CV-116-M, 2010 WL 1463196 (W.D. Ky. Apr. 8, 2010); *see Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (recognizing that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive

a summary judgment motion" (citations omitted)); *but see Univ. of Tex.*, 451 U.S. at 395 ("A party . . . is not required to prove his case in full at a preliminary-injunction hearing.").

These four factors generally ought to "be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary*, 228 F.3d at 736 (citations omitted). When a court, however, is able to determine the propriety of a preliminary injunction by relying on fewer than all four of the factors, it may do so. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ("The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" (quotation omitted)); *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 315 (6th Cir. 1998) (affirming the district court's issuance of a preliminary injunction based on the district court's conclusion that the plaintiff showed a likelihood of success on the merits). In particular, under the first factor, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citation omitted); *see Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed."); *see also Hall-Bey v. Ridley-Turner*, 154 F. App'x 493, 494 (7th Cir. 2005) ("If the party seeking the injunction cannot establish such a likelihood, the court ends its inquiry and denies the request." (citation omitted)).

6

### III. ANALYSIS

The Court begins by addressing some housekeeping matters to clarify and frame the legal issues in this case. The Court notes that John Does' claim, on the merits, is a claim under § 1983, which creates liability against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]" 42 U.S.C. § 1983. The statutory language "under color of [state law]" means that § 1983 is not a safeguard against private misconduct, no matter how objectionable. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Rather, § 1983 "prevent[s] *state* officials from using the cloak of their authority under state law to violate" federally protected rights. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 948 (1982) (Powell, J., dissenting) (emphasis added) (footnote omitted). In this same vein, § 1983's purpose "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails," *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted), and it offers injunctive relief as a remedy to this failure, *City of L.A. v. Lyons*, 461 U.S. 95, 133 n.23 (1983); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

When bringing a claim under § 1983, a plaintiff has to specify whether the claim is against a state official in his official or his individual capacity. *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 367 (6th Cir. 2008). In an individual-capacity claim, liability attaches to a state official personally for the alleged wrongdoing, whereas in an official-capacity claim, liability attaches only to the government entity itself. *Essex v.*

7

*County of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013). In this case, John Does name three defendants—Sevier County, the School Board, and Dr. Parton—and they identify their claim against Dr. Parton as an official-capacity claim. [Compl. at 1]. Dr. Parton, in his official capacity, is merely an agent of the School Board, and he is therefore a redundant party because the School Board is already a defendant in this action. *See Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013) ("Having sued . . . the entity for which [the defendant] was an agent, the suit against [the defendant] in his official capacity was superfluous."); *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) ("In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." (quotation omitted)); *see also Williams v. Alhambra Sch. Dist. No. 68*, No. CV-16-00461-PHX-GMS, 2017 WL 568351, at *3 (D. Ariz. Feb. 13, 2017) ("A suit against a school board member in his or her official capacity is equivalent to a suit against the school district." (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008))).

In short, John Does' § 1983 claim, properly characterized, is one for municipal liability against Sevier County and the School Board. That is to say, a local governing body, like every other individual, "can be sued directly under § 1983 for . . . injunctive relief." *Monell*, 436 U.S. at 690. A plaintiff is entitled to injunctive relief against a municipality when he satisfies a two-pronged inquiry:

> A municipal liability claim against [a] [c]ounty and [a] [s]chool [b]oard must be examined by applying a two-pronged inquiry: (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2)

Whether the [c]ounty and/or the [s]chool [b]oard is responsible for that violation. For liability to attach, both question must be answered in the affirmative.

*Doe v. Claiborne County*, 103 F.3d 495, 505–06 (6th Cir. 1996) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)). Against the backdrop of this two-part inquiry, John Does claim that they are experiencing a deprivation of their constitutional rights at the School Board's hands because the School Board is refusing to permit their re-enrollment in Sevier County High School:

> We're here today asking for [a] temporary injunction that allows these kids to return to the school they've attended their entire high school career.
>
> . . . .
>
> [T]hat's what this case is going to come down to, you know, why are these children being deprived of their ability to register . . . in the school they want to go to[?]
>
> We've heard testimony from the defendants acknowledging that every student in that county has the right to cho[o]se which school they attend.
>
> . . . .
>
> [T]hey're deprived of their opportunity to play basketball with that one particular . . . coach and the relationship they have there with that coach, as well as the other students and the other teachers of that school.
>
> There's no remediation of that. That's their harm.

[Second Hr'g Tr. at 80:24–25; 81:1; 82:3–9, 88:16–21]. To obtain a preliminary injunction, John Does must establish, based on the School Board's alleged violations of the First and Fourteenth Amendments, that their § 1983 claim is likely to succeed on the

9

merits under the two-pronged inquiry. *See Overstreet*, 305 F.3d at 573; *Claiborne County*, 103 F.3d at 505–06.

Indeed, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation," as is true here in this case, "the likelihood of success on the merits often will be the determinative factor." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (internal quotation marks and quotation omitted); *see Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014) (recognizing that "in the context of a First Amendment claim, the balancing of the[] factors is skewed toward an emphasis on the first factor" so that "[t]he other three factors often hinge on this first factor"). In considering the propriety of a preliminary injunction, the Court will therefore devote the bulk of its analysis to determining whether John Does have met their burden of showing that they are likely to succeed on the merits of their claim. The question of whether a party is likely to succeed on the merits is generally one of law, *Liberty Coins*, 748 F.3d at 689, and the Court will move forward with the understanding that John Does' failure to meet their burden as to this first factor will narrow—if not close—their pathway to injunctive relief under the remaining factors, *id.* at 90.

## A. Likelihood of Success on the Merits

In addressing the likelihood of whether John Does will succeed on the merits of their claim, the Court's first undertaking is to determine whether they have met their burden of establishing a constitutional violation with "[e]vidence that goes beyond the unverified allegations." *Salmon*, 2010 WL 716232 at *4. Although this showing does not

require a heightened standard of proof, it must be a particularly clear-cut in this case because of the School Board's involvement. *See Epperson v. Arkansas*, 393 U.S. 97, 104 (1968) ("Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not *directly and sharply* implicate basic constitutional values." (emphasis added) (footnote omitted)); *cf. Parate v. Isibor*, 868 F.2d 821, 827 (6th Cir. 1989) ("[T]he administration of the university rests not with the courts, but with the administrators of the institution."). Because John Does contend that the School Board is violating their constitutional rights under the First and Fourteenth Amendments, the Court will confine its analysis to these two amendments. [Compl. ¶ 18].

### 1. The First Amendment

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."[3] Within this language, our founders preserved an array of constitutional rights, which have a complex history in federal jurisprudence and which the federal courts, due to this complexity, have labored to define through an untold number of cases. The guarantees of free speech and free press, for instance, form only two folds in fabric of the First Amendment, yet they implicate "a wide assortment" of governmental restraints on expression. *Thomas v. Chi.*

---

[3] The First Amendment's prohibitions against the infringement of these freedoms apply to state governments through the Fourteenth Amendment. *44 Liquormart Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996).

11

*Park Dist.*, 534 U.S. 316, 320 (2002). Along with these freedoms, the First Amendment protects the freedom to select any religion or no religion at all, *Wallace v. Jaffree*, 472 U.S. 38, 52–53 (1985); the freedom to assemble peacefully, *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 512–13 (1939); and the freedom to redress grievances through access to administrative agencies and the courts, *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972).[4] In addition to these freedoms, the First Amendment even protects other peripheral freedoms—freedoms that do not expressly reside in its language but nevertheless "emanate[e] from those [freedoms that it] guarantees," like the freedom to associate. *Griswold v. Connecticut*, 381 U.S. 479, 482–84 (1965).

Despite the long lineage that these constitutional freedoms have in federal jurisprudence, and John Does' allegation of a constitutional violation under the First Amendment, John Does do not place any one of these freedoms at issue. In their brief to the Court, they do not mention the First Amendment, much less identify a freedom under the First Amendment that has been subject to deprivation by the School Board's refusal to re-admit them to Sevier County High School. Similarly, during the two evidentiary hearings, they raised no substantive argument under the First Amendment, despite having taken time for oral argument. They simply do not marshal any legal support for their position, failing to articulate an abridgment of a cognizable constitutional right. By the nature of their claim, they appear to believe that they have a peripheral constitutional right to enroll in any public school of their preference under the First Amendment, but

---

[4] "All these, though not identical, are inseparable." *Thomas v. Collins*, 323 U.S. 516, 530 (1945).

12

they cite no case law for this proposition, even though a determination of whether a party is likely to succeed on the merits is generally a question of law. *Liberty Coins*, 748 F.3d at 689.[5]

These inadequacies not only blunt their cause but also render it so fundamentally deficient that the Court must deem their argument under the First Amendment, for the purpose of securing a preliminary injunction, to be waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted); *see also* E.D. Tenn. L.R. 7.1(b) (requiring parties to provide the Court with the "legal grounds which justify the ruling sought from the Court"). John Does therefore fall well short of "directly and sharply" implicating a constitutional freedom that the School Board has violated under the First Amendment. *Epperson*, 393 U.S. at 104.

### 2. The Fourteenth Amendment

John Does' argument under the Fourteenth Amendment is in some ways as threadbare as their argument under the First Amendment. They do not, for instance,

---

[5] John Does, in their reply brief, do state that the District Attorney's Office threatened them with prosecution when they brought this action. [Pl.'s Reply Br. at 1–5; Lee Aff. ¶ 5; King Aff. ¶ 5]. They argue that the District Attorney's Office's conduct, as they describe it, violates the First Amendment because it "was designed to create a 'chilling effect'" and "thwart" their lawsuit against Sevier County and the School Board. [Pl.'s Reply at 2]. While this contention may comprise part of John Does' broader lawsuit against Sevier County under § 1983, it has little if anything to do with the issue here—whether the *School Board's* refusal to re-enroll them is an unconstitutional action under the First Amendment and requires enjoinment by this Court.

13

mention or raise arguments under the Fourteenth Amendment in their legal brief. During the second evidentiary hearing, however, John Does expressed their view that "this case is going to come down to" whether the Fourteenth Amendment's Equal Protection Clause protects them from "the deprivation or the diminishment of an access to education," providing the Court with something of a navigational heading. [Second Hr'g Tr. at 81:14–24; 82:3–4]. To support this argument, John Does invoked *Plyler v. Doe*, 457 U.S. 202 (1982), [*id.* at 81:19], in which the Supreme Court held that a Texas statute was unconstitutional under the Equal Protection Clause because it denied children of illegal immigrants the right to free public education, *Plyler*, 457 U.S. at 230.

"In analyzing an equal protection claim, a court must first determine the nature of the claim and the responsibilities of the state actors involved to determine what showing is required for the establishment of a prima facie case." *McCleskey v. Kemp*, 481 U.S. 279, 349 (1987) (citation omitted). John Does' case is nothing like *Plyler*; it does not involve state legislation or policies that circumscribe access to public education, or for that matter, undocumented children. In fact, the Supreme Court has expressly recognized that "[w]e have not extended [*Plyler*'s] holding beyond the 'unique circumstances' that provoked its 'unique confluence of theories and rationales.'" *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 459 (1988) (internal quotation and quotation omitted). And besides, the Supreme Court has asserted—even in *Plyler*—that a right to public education does not spring from the Equal Protection Clause, or the Constitution. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33–34 (1973) ("It is not the province of this Court to create substantive constitutional rights in the name of guaranteeing equal protection of

14

the laws. . . . Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *see also Kadrmas*, 487 U.S. at 458 ("Nor have we accepted that education is a 'fundamental right[.]'" (citation omitted)); *Plyler*, 457 U.S. at 221 ("Public education is not a 'right' granted to individuals by the Constitution." (citation omitted)).

Instead, John Does' argument—at its nub, and in the context of the record evidence—appears to be that the School Board is flouting the Equal Protection Clause because it is barring them from attending Sevier County High School while at the same time permitting other students with criminal histories to remain there:

> You've heard testimony that there were three occasions where [John Does] went and asked to reenroll in the school, and there wasn't a court order preventing them from doing that at that point.
>
> . . . . [T]hey were denied the opportunity, as other similarly situated folks in the school, to do so.
>
> There was also testimony . . . that even though there are other children at that school who have had criminal charges, some minor, some worse, [those children] are still able to go to that school.

[Second Hr'g Tr. at 85:22–25; 86:4–9]. The School Board does not appear to challenge this rendition of the facts. Instead, it explains that because John Does—as a condition of their settlement, now embodied in the Sevier County Juvenile Court's Orders—agreed never to return to Sevier County High School,[6] it would risk contravening those orders if

---

[6] John Does contest this point, claiming that their settlement with the State precluded their return to Sevier County High School for only a year. [First Hr'g Tr. at 38:23–25; 39:1–2; Second Hr'g Tr. at 18:22–25; 19:1]. Specifically, they claim that they agreed to this one-year proviso in the hallway outside the Sevier County Juvenile Court. [First Hr'g Tr. 38:24–25]. But this Court has no need to wade into these waters. John Does do not allege a contractual dispute but a constitutional one. In assessing the likelihood of success on the merits, the Court's task, at

15

it re-admits them there. [First Hr'g Tr. at 47:12–20]. During the first evidentiary hearing, the School Board stated that "[i]f the juvenile court system tomorrow . . . send[s] us a revised order that says, these students can enroll at Sevier County High School, we would let them enroll at Sevier County High School." [*Id.* at 47:17–20].[7] The question, then, that the Court must answer is whether the evidence of the School Board's refusal to permit John Does to return to Sevier County High School, in tandem with the evidence that it is letting other students with criminal histories remain there, can lay roots for a merit-worthy claim under the Equal Protection Clause.

The Equal Protection Clause prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. This language, in general terms, is "essentially a direction that all persons similarly situated should be treated alike" by states, whether through legislation or other types of official state actions. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). In litigation involving the Equal Protection Clause, the concern is almost always whether a state has enacted a law or taken other official action that is discriminatory against some clusters of society but not others, or in other words, that affects "some *groups* of citizens differently than others." *McGowan v. Maryland*, 366

_____

this point in its analysis, is not to vet the terms of the settlement agreements, or parol evidence, in an effort to divine John Does and the State's contractual intent.

[7] The School Board noted that John Does are not under suspension, expulsion, or any other form of school-related discipline, and John Does agree that school-related discipline is not the source of the parties' dispute. [*Id.* at 46:13–15; Second Hr'g Tr. at 16:13–24]. The parties' agreement on this point limits this case's constitutional implications. *See generally Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005) ("[T]he Due Process Clause is implicated by higher education disciplinary decisions." (citations omitted)).

U.S. 420, 425 (1961) (emphasis added); *see San Antonio Indep. Sch. Dist.*, 411 U.S. at 34–35 ("[I]t has long been settled that the Equal Protection Clause is offended only by laws that are invidiously discriminatory—only by classifications that are wholly arbitrary or capricious." (Stewart, J., concurring) (citation omitted)); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). These "groups of citizens" are known under federal law as "suspect classes," which are groups that have been "subjected to . . . a history of purposeful unequal treatment, or relegated to . . . a position of political powerlessness." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976) (quotation omitted). Some classic examples of suspect classes include race and national origin, as well as, oftentimes, gender. *Personnel Admin'r of Mass. v. Feeney*, 442 U.S. 256, 272–73 (1979).

John Does do not allege that they are part of a suspect class; they do not argue that they are part of a suspect class; and they do not present evidence showing that they are part of a suspect class. *See Engquist*, 553 U.S. at 601 (noting that when plaintiffs bring a claim under the Equal Protection Clause, they "generally allege that they have been arbitrarily classified as members of an 'identifiable group'" (quotation omitted)). As a result, John Does' claim under the Equal Protection Clause would appear to lean on the theory that John Does believe the School Board singled them out as a "class of one," a theory under which a plaintiff, even when he is not a member of a suspect class, may bring a claim under the Equal Protection Clause. *Id.* at 601–03; *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000); *see generally Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) ("[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or

17

malicious treatment not based on membership in a disfavored class." (quotation omitted)); *see also Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) ("The purpose of the equal protection clause of the Fourteenth Amendment is to secure *every person* within the state's jurisdiction against intentional and arbitrary discrimination[.]" (emphasis added) (quotation omitted)). The Supreme Court has stated that a class-of-one claim is available when a plaintiff shows that he has (1) "been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564 (citations omitted). But multiple shortcomings impede John Does from establishing that they are likely to succeed on the merits of a class-of-one claim.

First, and most conspicuously, John Does do not allege or argue that they are bringing an equal-protection claim under a class-of-one theory, and they cite no case law to support a class-of-one theory. *See McPherson*, 125 F.3d at 995–96. Second, even if they had raised this theory, the Court is not convinced that they muster enough evidence to show a likelihood of success under the first element of a class-of-one claim. Under a burden that requires John Does to illustrate that the circumstances "clearly demand" a preliminary injunction, *Overstreet*, 305 F.3d at 573, a contention that that School Board has intentionally singled them out, with animus, lacks sufficient undergirding from the record evidence. John Does do show that the School Board denied their re-admission on three prior occasions, even though the Sevier County Juvenile Court's Orders had not yet been issued at those times, and this evidence does undercut the School Board's position that these orders have always been the reason for refusing John Does:

18

A: We met with Dr. Enloe there at the Sevier County Board of Education a few times and explained to Dr. Enloe that our case has been expunged, and there's no orders keeping our kids from attending Sevier County High School. And he said that he would still have to obey the courts, but there was no court orders or court records to obey. We attempted once, twice, and then the third time we attempted, that's when I went and met with Northview High School. And then we contacted you.

Q: Subsequently, you filed this action here in federal court, didn't you?

A: Yes, sir.

[Second Hr'g Tr. at 8:23–25; 9:1–8].

But against this evidence, the record contains the School Board's assertion that if the Sevier Count Juvenile Court revises its orders, it would readily allow John Does to return to Sevier County High School. [First Hr'g Tr. at 47:17–20]. Similarly, Dr. Cline testified that neither she nor the School Board harbors any negative sentiments toward them. [Second Hr'g Tr. at 57:21–25; 58:1]. She also empathized with John Does' predicament, acknowledging that it must be "very difficult" for them and noting that she too once had to change schools as a student. [*Id.* at 78:19–23]. And John Does concede that no one affiliated with the School Board has ever informed them that they are unwelcome at Sevier County High School. [*Id.* at 17:12–17]. Tying all this evidence together, the School Board invited John Does to stay in the Sevier County School System by attending any one of its other four high schools. [*Id.* at 61:19–25; 62:1–5].

Overall, then, the record is mottled with at least some conflicting evidence as to the School Board's reason for excluding John Does from Sevier County High School. In the context of a motion for summary judgment, this conflicting evidence conceivably

might create the *inference* that the School Board had an ulterior reason for its refusal to re-enroll John Does in Sevier County High School. But here, John Does are operating under the exacting standard that governs a preliminary injunction, and a factual dispute between the parties, without more, does not avail them under this standard. *See Leary*, 228 F.3d at 739 (recognizing that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion" (citation omitted)). Simply, evidence that bends both ways, as it does here, does not establish that a party is *likely* to succeed on the merits and that the circumstances *clearly* demand the extraordinary remedy of a preliminary injunction.

In addition, John Does do little to demonstrate that they are similarly situated to those unspecified students who remain enrolled at Sevier County High School despite their criminal histories. While the Sixth Circuit has "not yet defined the extent to which individuals must be similarly situated to others in order to maintain a class-of-one claim," it has highlighted—if not endorsed—the Seventh Circuit's view that "the challenger and his comparators must be '*prima facie* identical in all relevant respects or directly comparable . . . in all material respects.'" *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)). This legal standard is consistent with the Supreme Court's acknowledgment that it has always been scrupulous in cases involving a class-of-one claim and demanded clear facts so that it could "readily assess[]" a class-of-one plaintiff. *Engquist*, 553 U.S. at 602.

John Does must therefore present evidence showing that at least some of their peers remain enrolled at Sevier County High School despite a judicial order or similar

20

decree that actively bars their enrollment there. *See JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 926–27 (W.D. Mich. 2009) (stating that "[t]he court is not aware of any precedent precluding us from adopting the Seventh Circuit's sensible requirement" that a plaintiff, to be similarly situated in a class-of-one case, must be identical in all relevant respects or directly comparable in all material respects (citation omitted)); *see also Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009) ("[W]e have frequently noted that the 'similarly situated' requirement must be rigorously applied in the context of 'class of one' claims." (citations omitted)); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." (citation omitted)). John Does, however, furnish the Court with no evidence to this effect, and without it, they fail to establish that they are likely to succeed on the merits of a class-of-one claim. Although the absence of this evidence, at this stage, ends their pursuit for a preliminary injunction, it does not of course preclude them from proceeding with their claim.[8]

## B.  The Remaining Factors

Because John Does fail to establish that their alleged constitutional violations are likely to succeed on the merits under § 1983, the balance of the remaining factors do not

---

[8] The Family Education Rights Privacy Act ("FERPA"), 20 U.S.C. § 1232g, however, may limit if not obstruct certain discovery that John Does may wish to obtain. *See generally United States v. Miami Univ.*, 294 F.3d 797, 806 (6th Cir. 2002) ("For the last quarter of a century, the FERPA has helped protect the privacy interests of students and their parents. In fact, Congress enacted the FERPA 'to protect [parents' and students'] rights to privacy by limiting the transferability of their records without their consent.'" (quotation omitted)).

21

trend in favor of a preliminary injunction. *See Overstreet*, 305 F.3d at 578 ("The Court has already discussed the fact that it is unlikely that [the plaintiff] will be able to demonstrate that he has a cognizable constitutional claim. Thus, his argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit."); *see also Liberty Coins*, 748 F.3d at 690 (recognizing that "where the public interest lies . . . is dependent on a determination of the likelihood of success on the merits of the [constitutional] challenge" (quotation omitted)). The heft of these factors pushing against John Does, the Court must reject their request for a preliminary injunction.

## IV. CONCLUSION

John Does fail to meet their evidentiary burden of showing that the circumstances in this case clearly demand the extraordinary remedy of a preliminary injunction. As a result, Plaintiffs' Motion for Preliminary Injunction [doc. 4] is **DENIED**. This action will proceed on the merits.

**IT IS SO ORDERED.**

ENTER:


s/ Leon Jordan
United States District Judge

22