UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOE #1, by and through his next friend, SUSAN LEE, and JOHN DOE #2, by and through his next friend, BILLY KING, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:17-CV-41 |
| SEVIER COUNTY, TENNESSEE, SEVIER COUNTY BOARD OF EDUCATION, and Superintendent DR. JACK PARTON in his official capacity, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment [doc. 58], Defendants' Brief in Support of the Motion [doc. 59], Plaintiffs' Response [doc. 67], and Defendants' Reply [doc. 68]. For the reasons herein, the Court will grant the motion in part and deny the motion in part.

### I. BACKGROUND

Plaintiffs John Doe #1 and John Doe #2 ("John Does") are minors and former students at Sevier County High School in Sevierville, Tennessee, where they were members of the school's basketball team. [Lee Aff., doc. 12-1, ¶¶ 2–3; King Aff., doc. 12-2, ¶¶ 2–3]. Last year, while John Does were in their junior year, they were arrested, jailed, and charged with aggravated rape. [Lee Aff. ¶¶ 2–3; King Aff. ¶¶ 2–3]. "[A]s a condition

of bond," they "[were] restrained from attending high school at Sevier County High School." [Lee Aff. ¶ 3; King Aff. ¶ 3]. John Does and the District Attorney's Office, however, reached an eventual settlement agreement in the Sevier County Juvenile Court, which announced the terms of the agreement in open court and did not memorialize the specific terms of the agreement in a written order. [First Hr'g Tr., doc. 47, at 8:18–25, 9:1–23; Second Hr'g Tr., doc. 69, at 18:8–19; *see* Juvenile Records, doc. 9-1, at 1–7].

Since then, John Does have had the charges expunged from their juvenile records, [Chief Deputy Clerk Letter No. 1, doc. 1-5, at 1; Chief Deputy Clerk Letter No. 2, doc. 1-6, at 1],[1] and attempted to re-enroll in Sevier County High School on three separate occasions, [Second Hr'g Tr. at 8:23–25, 9:1–5]. The Sevier County School Board ("School Board"), however, denied them the opportunity to re-enroll in Sevier County High School, based on a concern that their settlement agreement or the Sevier County Juvenile Court had barred them from returning to that specific school. [*Id.*]. The School Board instead offered them enrollment in any one of their four other high schools in Sevier County. [*Id.* at 61:19–25; 62:1–5].

John Does then brought this action against Sevier County, the School Board, and Superintendent Dr. Jack Parton ("Defendants"), alleging they violated 42 U.S.C. § 1983 by abridging their rights under the First Amendment and the Fourteenth Amendments of

---

[1] Tenn. Code Ann. subsection 40-32-101(a)(1)(A)(i) states that "[a]ll public records of a person who has been charged with a misdemeanor or a felony shall, upon petition by that person to the court having jurisdiction in the previous action, be removed or destroyed . . . if . . . [t]he charge has been dismissed[.]"

2

the United States Constitution. [Compl., doc. 1-1, ¶ 18].[2] John Does also contemporaneously filed a motion for a preliminary injunction under Federal Rule of Civil Procedure 65, alleging that they "have invested themselves tremendously in the athletic program at Sevier County High School," that they are "considered to [be] physically gifted, highly talented within their skill set for their particular sport," and that "transferring to any other school will cause irreparable harm." [Compl. ¶¶ 9–10; *see* Mot. Preliminary Inj., doc. 4, at 1]. Specifically, they claim that "opportunities that were available to them for scholarships and to compete collegiately have been damaged and/or are rapidly diminishing" because they have been unable to attend Sevier County High School and participate in its basketball program. [Compl. ¶ 20].

Within days of John Does' filing of this action, the School Board proceeded to the Sevier County Juvenile Court, which, at the School Board's request, memorialized the terms of John Does' settlement agreements in written Orders. [*See* Juvenile Records at 1–7]. The School Board has since filed these Orders with this Court, and they state:

> Pursuant to an agreement announced in Court on a separate case, and a petition to this Court for entry of an Order memorializing the agreement, the following is ORDERED that:
>
> 1. That the respondent[s] . . . shall have no contact, directly or indirectly, with [the victim], a minor whose identity is known to the parties, the Court and the Sevier County School System.
>
> 2. No contact means respondent[s] shall not appear at any location where [they] know[] [the victim] will be present.
>
> 3. Should inadvertent contact occur, the burden is on the respondent[s] to cease the contact.

---

[2] John Does do not raise claims under the Tennessee Constitution.

3

4. Respondent[s] shall not re-enroll in Sevier County High School.

[*Id.* at 3–4, 6–7].

Shortly after John Does brought this action, this Court scheduled an evidentiary hearing, at which the parties presented evidence and argument as to the propriety of a preliminary injunction. [Order, doc. 29, at 1; First Hr'g Tr. at 1–59]. A few weeks later, the Court scheduled a second evidentiary hearing, to accommodate John Does' request to present additional evidence for an injunction. [Second Order, doc. 54, at 1]. Before the hearing could take place, however, Defendants filed for summary judgment, attacking the merits of John Does' case on evidentiary and legal grounds. The Court reserved ruling on their request for summary judgment, choosing to resolve the immediate issue before it—the need for a preliminary injunction—before reaching the merits of the case.

The second hearing went on as scheduled. During the hearing, the Court received testimony from several witnesses, including John Doe #1; John Doe #2; John Doe #1's father; John Doe #2's father; Assistant District Attorney Rolfe A. Straussfogel; Jackie Renee Brown, who is John Does' homebound instructor; and Dr. Debra Ann Cline ("Dr. Cline"), who is the assistant superintendent and director of curriculum and instruction for the Sevier County School System. Dr. Cline stated that the Sevier County School System has a policy of "open enrollment," which she described in the following way: "[I]f [a parent] is a resident of [Sevier] [C]ounty and his or her child resides in the home with that parent . . . he or she can select [any one of the five] school[s] in [Sevier County]." [*Id.* at 61:1–5]. After carefully considering the testimony and other evidence from the hearing,

the Court declined to enter a preliminary injunction. [Mem. Op., doc. 70, at 22].[3] The Court now will redirect its focus to Defendants' request for summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the nonmoving party's" claim or defense, *id.* at 325, at which point the nonmoving party, to survive summary judgment, must identify facts in the record that create a genuine issue of material fact, *id.* at 324.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case under the applicable substantive law, *id.*, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as

---

[3] After the Court's ruling, John Does enrolled in neighboring Seymour High School, where they are members of the basketball team. [*See* Letter to Pls.' Counsel, doc. 79-1, at 1].

5

a matter of law." *Id.* at 251–52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A court may also resolve pure questions of law on a motion for summary judgment. *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 550 (2015).

### III. ANALYSIS

Following the hearings, the Court denied John Doe's request for a preliminary injunction primarily because it determined that John Does are unlikely to succeed on the merits of their claims. [Mem. Op. at 21].[4] On the merits, John Does' claims are alleged violations of 42 U.S.C. § 1983, which has two elements: (1) the defendant deprived the plaintiff of a constitutional right (2) while acting under color of state law. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). Again, John Does allege that Defendants' refusal to let them re-enroll in Sevier County High School violates § 1983 by abridging their First Amendment and Fourteenth Amendment rights. [Compl. ¶ 18].

---

[4] When considering whether to issue a preliminary injunction, a court considers four factors: (1) whether the movant has shown a strong likelihood of success on the merits of the controversy; (2) whether the movant will suffer irreparable harm without an injunction; (3) whether an injunction would cause substantial harm to others; and (4) whether an injunction would serve the public interest. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[A] finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

As to their First Amendment claim, the Court ruled that John Does are unlikely to prevail on the merits because they identified no infringement of a First Amendment right in their legal briefs or during the two evidentiary hearings. [Mem. Op. at 11–13]. As to their Fourteenth Amendment claim, the Court described it as a class-of-one claim under the Equal Protection Clause. [*Id.* at 21]. The Court recognized that a class-of-one claim requires John Does to present evidence of an "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." [*Id.*]. After the two hearings, the record lacked any evidence to this effect, causing the Court to conclude that John Does were unlikely to satisfy the exacting standard necessary to succeed on the merits of a class-of-one claim. [*Id.*].

Although the Court denied John Does' request for a preliminary injunction, it permitted their case to continue on the merits. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." (citations omitted)). Since then, this case has moved beyond the preliminary-injunction stage and into discovery. [*See* Defs.' Initial Disclosures, docs. 76; Pls.' Initial Disclosures, doc. 78; *see also* Scheduling Order, doc. 74, at 3].

### A. The Fourteenth Amendment

A class-of-one claim is available when a plaintiff shows that he has (1) "been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65

(2000). In moving for summary judgment, Defendants challenge the second element, insisting that their actions are rationally related to a legitimate state purpose—adherence to the Sevier County Juvenile Court's Orders. [Defs.' Reply at 2–5]. Again, those Orders provide that "Respondent[s] shall not re-enroll in Sevier County High School." [Juvenile Records at 3–4, 6–7].

The Court is inclined to accept Defendants' contention that their compliance with the Sevier County Juvenile Court's Orders bears a rational relationship to a legitimate state interest. *Cf. Joe Sanfelippo Cabs Inc. v. City of Milwaukee*, 46 F. Supp. 3d 888, 892 (E.D. Wis. 2014) ("[T]he City was under a state court order to remove the cap. [This] reason[] would likely provide a rational basis for removing the cap."); *Martin v. Smith*, No. CV 08-470-S-CWD, 2009 WL 3199638, at *11 (D. Idaho Sept. 30, 2009) (determining that local officials' actions were "rationally related to a legitimate governmental objective" when they "were attempting to follow the state court's order" (citation omitted)). But the Court need not address this issue because Defendants' compliance with these Orders, in and of itself, does not resolve the dispositive issue in this case. The dispositive issue is whether they are adhering to these Orders while at the same time *not* recognizing similar orders or decrees applying to other students enrolled in Sevier County High School.

As Defendants undoubtedly recall, John Does contended during the second hearing that the School Board is violating the Equal Protection Clause because it is prohibiting them from returning to Sevier County High School but at the same time allowing other students with criminal histories to remain there:

> . . . . They were denied the opportunity, as other similarly situated folks in the school, to [attend the school].
>
> There was . . . testimony . . . that even though there are other children at that school who have had criminal charges, some minor, some worse, [those children] are still able to go to that school.

[Second Hr'g Tr. at 85:22–23, 86:6–9]. The Court later addressed this argument, noting that this testimony was not enough to secure a preliminary injunction under a class-of-one theory. The Court stated that this theory—as it moves forward on the merits—would be tenable only if John Does could assemble "evidence showing that at least some of their peers remain enrolled at Sevier County High School despite a judicial order or similar decree that actively bars their enrollment there." [Mem. Op. at 20–21].

John Does unquestionably have an uphill slog in attempting to make this rigorous evidentiary showing for their class-of-one claim. *See Epperson v. Arkansas*, 393 U.S. 97, 104 (1968) ("Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not *directly and sharply* implicate basic constitutional values." (emphasis added) (footnote omitted)). But to have any chance to make this fact-sensitive showing, they will need the benefit of discovery. Only through the discovery process will John Does be able to determine whether "some of their peers remain enrolled at Sevier County High School despite a judicial order or similar decree that actively bars their enrollment there." [Mem. Op. at 20–21].

In this circuit, "[t]he general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Duncan v. Med. Educ. Assistance, Corp.*, No. 2:12-CV-182, 2013 WL 1249574, at *7 (E.D. Tenn. Mar. 27, 2013)

9

(quoting *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996)); *see Bowers v. Ophthalmology Grp., LLP*, 648 F. App'x 573, 580 (6th Cir. 2016) ("Typically, when the parties have no opportunity for discovery, denying the [Rule 56(d)] motion and ruling on a summary judgment motion is likely to be an abuse of discretion." (quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008))). Because a class-of-one claim is a fact-intensive one and heavily dependent on the discovery process—which is not yet complete in this case—the Court will not jettison John Does' Fourteenth Amendment claim at this time. *See Duncan*, 2013 WL 1249574 at *7. And along similar lines, summary judgment is inappropriate because the Court already acknowledged, after the two hearings, that the record contains "at least some conflicting evidence as to the School Board's reason for excluding John Does from Sevier County High School." [Mem. Op. at 19].

The Court, however, will issue a word of caution to John Does. If they fail to uncover the evidence that the Court has described in this Opinion, the Court fully expects them to heed Federal Rules of Civil Procedure 11 and 41. Otherwise the specter of sanctions is likely to overshadow this litigation. *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief . . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"); *see also Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002) ("[W]e must reverse [the district court's dismissal of the plaintiff's claims], but we warn [the plaintiff] that if he persists in this litigation and

his suit turns out to be frivolous, as we believe highly likely, he is courting sanctions." (citations omitted)).

### B. The First Amendment

Defendants next argue that they are entitled to summary judgment on John Does' First Amendment claim, asserting that "it is unclear what specific First Amendment right is at issue under Plaintiffs' theories." [Defs.' Br. at 12]. John Does, in response, attempt to bring some illumination to their position. They maintain that Defendants are infringing their First Amendment rights by barring them from Sevier County High School despite having an open-enrollment policy. [Pls.' Resp. at 5]. In raising this argument, they appear to implicate the First Amendment right to freedom of association. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984).

To support their argument, they cite two cases: *Papasan v. Allain*, 478 U.S. 265 (1986) and *San Antonio Independent School District v. Rodriquez*, 411 U.S. 1 (1973). But neither one of these cases involves any issue under the First Amendment; instead, they involve disputes under the Eleventh Amendment and the Fourteenth Amendment, respectively. Whatever legal support that John Does claim to glean from these cases is therefore dicta. *See Cent. Va. Cmty. Coll. V. Katz*, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta[.]"); *cf. Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring) ("'[C]learly established Federal law, as determined by the Supreme Court of the United States' . . . . refers to the holdings, as opposed to the dicta, of this Court's decisions[.]" (quotation omitted))); *Dallio v. Spitzer*, 343 F.3d 553, 562 (2d Cir. 2003)

("While 'general expressions' of law by the Supreme Court that go beyond the actual decision in the case may well merit respect, they do not constitute 'clearly established law, as determined by the Supreme Court[.]'" (internal quotation omitted)).

Besides, Defendants correctly point out that the Sixth Circuit has rejected a claim that the freedom to associate under the First Amendment provides students with the right to attend a high school of their preference. *Compare Strehlke v. Grosse Pointe Public School System*, 654 F. App'x 713, 724 (6th Cir. 2016) (affirming summary judgment against parents who argued that a school board violated their children's First Amendment right of association by refusing to allow them to enroll in and "form relationships at a particular school"), *with* [Second Hr'g Tr. at 88:15–20 ("So the harm they suffer in having to go to one of these other four schools is they're deprived of their . . . relationship . . . with that coach, as well as the other students and the other teachers of that school.")]. Defendants therefore meet their burden for summary judgment.

### C. The Doctrine of Judicial Estoppel

Defendants, lastly, move for summary judgment on John Does' claims by invoking the doctrine of judicial estoppel, an equitable doctrine under which courts may prevent a party from "achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1217–18 (6th Cir. 1990) (citation omitted). Defendants argue that the doctrine should apply to this case because of John Does' inconsistent positions in the Sevier County Juvenile Court and in this Court. They reiterate that John Does, in the Sevier County Juvenile Court, agreed not

to return to Sevier County High School in exchange for dismissal of the charges but now maintain that the bar against their return is a violation of their constitutional rights. [Defs.' Br. at 15].

"[T]o invoke judicial estoppel," however, "a party must show that the opponent took a contrary position *under oath in a prior proceeding*." *Teledyne*, 911 F.2d at 1218 (emphasis added) (citation omitted). Defendants fail to mention or make this showing, and the record does not support this showing. In this Court, John Does' fathers gave no indication that they had ever testified under oath in the Sevier County Juvenile Court regarding the terms of the settlement agreements, if at all. Instead, they stated that they reached these terms in impromptu fashion—with the Assistant District Attorney in the hallway outside the Sevier County Juvenile Court. [First Hr'g Tr. at 8:18–25, Second Hr'g Tr. at 18:5–6]. The mere "prior inconsistent statements" that Defendants complain of are not enough to compel this Court to judicially estop John Does. [Defs.' Br. at 16]. It will therefore decline Defendants' invitation to apply the doctrine of judicial estoppel.

## IV. CONCLUSION

As the movant for summary judgment, Defendants satisfy their burden in some respects but not in others. Defendants' Motion for Summary Judgment [doc. 58] is therefore **GRANTED in part and DENIED in part**. The Court orders as follows:

1. To the extent that Defendants request summary judgment on John Does' claim under the First Amendment, their Motion for Summary Judgment [doc. 58] is **GRANTED**.

2. Defendants' Motion for Summary Judgment [doc. 58] is **DENIED** in all other respects.

   **IT IS SO ORDERED.**

                                                            ENTER:


                                                   s/ Leon Jordan
                                                 United States District Judge